UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| K & S ASSOCIATES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:09-01108 |
| ) | JUDGE HAYNES |
| AMERICAN ASSOCIATION OF ) | |
| PHYSICISTS IN MEDICINE ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Before the Court is Plaintiff's motion to compel production of a June 9, 2009 legal memorandum of Murray Bevan, Defendant's counsel. (Docket Entry No. 36). Plaintiff argues this memorandum is not privileged because testimony and documentary evidence establish Defendant's reliance upon Bevan's advice on the Defendant's decision not to reaccredit Plaintiff or alternatively, the Defendant waived the privilege by its voluntarily disclosure of the memorandum's substance in discovery. In its response (Docket Entry No. 39), Defendant asserts that Bevan's memorandum is protected under the attorney-client privilege and the work-product doctrine that have not been waived.

For the reasons set forth below, the Court concludes that Plaintiff lacks proof that Defendant has asserted this privilege or waived the attorney-client or work product privilege. Thus, Plaintiff's motion to compel production of the Bevan memorandum should be denied.

### A. ANALYSIS OF MOTION

Members of the Defendant's Calibration Laboratory Accreditation Subcommittee ("CLA-S") and some members of Bevan's law firm discussed the Bevan Memorandum in a conference call on June 10, 2009. (Docket Entry No. 39, Defendant's response at 2). The minutes of that meeting state:

> Agenda:
>
> 1. Report of the surveillance visit (Malcolm)
> 2. **Report of AAPM legal counsel on conflict of interest**
> 3. Discussion
>
> **The intent was NOT move to a vote about this issue but to discuss the possible scenarios** that can be follow. A separate call / meeting will be scheduled for a formal CLA-voting member vote.
>
> 1. MMc presented the final version of the Surveillance visit report. Technically no problem. Site visit team based the Conflict of Interest handling on sections 4.1.4 and 4.1.5 in the criteria.
> 2. The AAPM legal people presented their report (letter). Clearly COI procedures cannot take away contravenance with article B.2. in Criteria. **Legal document will be disseminated to voting membership after NDA is signed.** J Ogborn at AAPM to collect the NDAs.
> 3. Discussion - Based on current criteria, lab cannot be re-accredited. However, no vote was tabled. JS informed group about upcoming tele meeting with the Board regarding the same. Agreed to meet again (face-to-face at AAPM) after input from the board.

(Docket Entry No. 36, Exhibit D) (emphasis added).

The Bevan Memorandum was then given to each CLA-S member prior to CLA-S's July 25, 2009 meeting. The minutes from the July 25, 2009 meeting reflect, in relevant part:

> K&S. Underwent surveillance visit. Technically sound operation, no technical concerns. PTW acquisition in since January 16, 2009. Report by MMc. Motion to reaccredit put forward to vote. Discussion of motion. Issue: Criteria do not allow company ownership (AAPM legal). Vote: 1 in favour, 8 opposed. Motion declined. Second motion: CLA Voting membership will investigate which modification of Criteria are necessary to enable manufacturer ownership. A follow-up discussion and vote will be held in a teleconference session, mid-to end September 2009.

2

Id., Exhibit F.[1]

## B. Conclusions of Law

"'The attorney-client privilege protects from disclosure confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client.'" Ross

---

[1]Plaintiff also cites the deposition testimony of Dr. George Ding, a voting CLA-S member, for his reliance on advice on counsel's memorandum:

> Q. All right. Then let me ask you, why did you vote against the motion to recommend K&S's reaccreditation?
>
> A. It's based on the – it's before the voting, we had consulted with AAPM lawyer/counsel, and we get special guidance. We asked very strict – very clear questions. Said from this criteria, you read through and does it have a conflict of interest given the K&S in this case?
>
> And we get answer from the lawyer and says it is conflict of interest. And that's what I based it on.
>
> Q. Okay.
>
> A. So by the time we're voting is very simple. We just asked this question and we got the answer.
>
> If they didn't give answer, we do not know what to vote because technically, the thing is satisfied, physics part of the calibration.
>
> Q. In other words – I don't want to put words in your mouth – but K&S's calibration technical work was satisfactory?
>
> A. Yes.
>
> Q. All right. Would it be fair to say that AAPM's lawyer made the decision about the motion?
>
> A. No. I don't think so.

(Docket Entry No. 42, Plaintiff's reply at 3). Plaintiff, however, did not provide a copy of the deposition excerpt and the Court cannot consider this testimony.

v. City of Memphis, 423 F.3d 596, 600 (6th Cir. 2005) (citations and internal quotation marks omitted). Federal courts construe the attorney-client privilege narrowly "'because it reduces the amount of information discoverable during the course of a lawsuit.'" Id. (citations omitted). In the Sixth Circuit, the elements of the attorney-client privilege are:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser (8) except the protection be waived.

Humphreys, Hutcheson and Moseley v. Donovan, 755 F.2d 1211, 1219 (6th Cir. 1985) (quoting United States v. Goldfarb, 328 F.2d 280, 281 (6th Cir.), cert. denied, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964)). The party asserting the privilege has the burden of establishing the privilege's existence. United States v. Dakota, 197 F.3d 821, 825 (6th Cir. 1999).

The attorney-client privilege may be "waived by voluntary disclosure of private communications by an individual or corporation to third parties." Id. A client may also waive the privilege "by conduct which implies a waiver of the privilege or a consent to disclosure." Id. "Implied waivers are consistently construed narrowly." In re Lott, 424 F.3d 446, 453 (6th Cir. 2005). "Both the attorney-client privilege and work-product protection are waived by voluntary disclosure of private communications to third parties." New Phoenix Sunrise Corp. v. C.I.R., No. 09-2354, 2010 WL 4807077, at *8 (6th Cir. Nov. 18, 2010) (citing Dakota, 197 F.3d at 825 and In re Columbia/HCA Corp., 293 F.3d 289, 306 (6th Cir. 2002) ("[T]here is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege.")). Yet, an inadvertent disclosure does not waive the privilege. Fed. R. Civ. P. 26.

4

In In re Grand Jury Proceedings Oct. 12, 1995, 78 F.3d 251 (6th Cir. 1996), the Sixth Circuit addressed a client's disclosure of the underlying facts and concerns of their counsel:

> In an effort to investigate allegations that a private laboratory was improperly inducing nursing homes to give it business and seeking reimbursement from Medicare for tests performed by nursing home personnel, two government investigators met with its owner and president. Shortly after the meeting began, the owner and president informed the agents that they had met with a Washington, D.C. attorney who specializes in Medicare law, and they told the investigators the attorney's name. They told the agents that they brought their twenty-four point marketing plan to the attorney and that they described the various elements of the plan to her in detail.
>
> The agents inquired into allegations that the laboratory had been providing nursing homes free products such as glucose strips, lancets, Sharps disposal containers, and glucometers, and that the lab was billing Medicare for tests being done by nursing home personnel.
>
> The owner and president told the investigators that their attorney was concerned that providing free Sharps needle disposal containers could constitute an illegal inducement or kickback. But, the president noted, the attorney had no problem with the laboratory billing Medicare for tests done by nursing home personnel or with providing nursing homes free glucose testers and lancets. When asked by the agents about the apparent inconsistency between the lawyer's advice regarding free Sharps disposal containers and free glucose testers, the president responded, "That's the advice I had of the attorney at the time."

Id. at 253.

Because the owner and president revealed a significant part of the attorney's advice, the Sixth Circuit deemed the attorney-client privilege waived.

> [T]he owner and president of the laboratory did discuss the substance of their attorney's advice. The owner and president did not merely assert that their attorney had looked into the matter; **they told the investigators that they had described the specific programs in detail and that the attorney approved some parts of the plan and recommended they discontinue other parts. The information the owner and president gave to the investigators revealed their attorney's legal conclusions and the facts on which those conclusions were based.** Moreover, by indicating that the attorney had told them that one element of the marketing plan-the provision of free Sharps disposal containers-could constitute an illegal inducement,

5

the president and owner revealed both the legal conclusion and the reasoning behind the conclusion.

Id. at 254 (emphasis added).

Plaintiff also cites In re Grand Jury Subpoena, 341 F.3d 331 (4th Cir. 2003) and Weil v. Investment/Indicators, Research and Management, Inc., 647 F.2d 18 (9th Cir. 1981) as establishing Defendant's waiver of the attorney-client privilege by references to the Bevan Memorandum in the two documents produced in discovery. In In re Grand Jury Subpoena, an individual was the subject of a grand jury investigation regarding false statements to FBI agents in contradiction to his earlier "green card" application. This individual cited his reliance upon advice of counsel. 341 F.3d at 334.

> During the interview, one of the FBI agents asked Appellant about an answer he had provided to the following question on Form I-485 ("Question 1(b)"): "Have you ever, in or outside the United States ... been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance, excluding traffic violations[?]" . . . . Appellant had answered that question "no." . . . Before the interview, the FBI had learned that Appellant had a prior conviction for shoplifting. The FBI agent confronted Appellant with a printout reflecting that conviction and asked why he had answered "no" to Question 1(b). Appellant responded, "I answered 'no' to the question ... under the advice of an attorney." . . . Appellant subsequently identified Counsel by name, and he also gave the name of a second attorney.

Id. (internal citations omitted).

The Government then deposed the Appellant's former attorney who refused to answer questions regarding whether she advised her client to answer "No" on the form. Id. The district court concluded that the client's statements to the FBI agents constituted an implicit waiver of the attorney-client privilege. Id. In affirming, the Fourth Circuit stated:

> Appellant argues that these statements did not constitute a waiver of the attorney-client privilege because they merely revealed his *conduct*-i.e., that he had acted in a particular way relying on the legal advice of an attorney-rather than disclosing the substance of that advice. This distinction fails, however, because Appellant clearly stated to a third party that his attorney had advised him to answer "no" to Question 1(b). This same information is the subject of the second (and

ultimate) question posed to Counsel by the Government: whether she advised Appellant to answer "no" to Question 1(b).

Id. at 337 (emphasis in original).

In Weil a corporate defendant failed to register its mutual fund shares under various states' "Blue Sky" laws and its corporate officer, a director and alleged control person, "testified that the Fund had been advised by its Blue Sky counsel that 'it would be best to register wherever the Fund had a single shareholder.'" 647 F.2d at 18, 23. The defendant also released a letter of in-house counsel about the registration of fund shares in certain states. Id. The Ninth Circuit held the privilege waived, stating that "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." Id. at 24.

Defendant cites Equal Employment Opportunity Commission v. Texas Hydraulics, Inc., 246 F.R.D. 548 (E.D. Tenn. 2007), where prior to his termination, an employee filed a charge of religious discrimination and retaliation against the defendant with the EEOC. 246 F.R.D. at 550. The EEOC investigated the charge that it dismissed an issued a right to sue letter. Id. After the employee's termination, the employee filed a second charge with the EEOC, and the defendant sought to compel the production of EEOC documents on the employee's first charge, contending that the EEOC's dismissal of the original claim waived any attorney-client privilege to these documents. Id. at 550, 554-55. The district court concluded that the EEOC did not waive the attorney-client privilege because "the EEOC's ultimate conclusion-its findings-as to the First Charge . . . did not reveal the conclusions, legal advice or privileged communication of the EEOC's attorneys during the investigation of the First Charge or the legal reasoning upon which the ultimate conclusion was based." Id. at 557.

Given that Defendant has not filed an answer to the amended complaint to assert any defenses, the Court cannot discern whether the Defendant will assert the advice of counsel defense. Therefore, the only issue is whether Defendant waived the attorney-client or work product privilege based upon the disclosure of the two documents. As noted earlier, the Court cannot consider the cited deposition testimony. In a word, the Court cannot conclude that the two references to the Bevan memorandum in the two documents are the equivalent of the disclosures in In re Grand Jury Subpoena and Weil. Here, the cited minutes do not describe the opinions, analysis or bases for the legal reasoning underlying the Bevan memorandum. The Court concludes these brief references do not meet the facts in the cited Sixth or Fourth Circuit decisions.

Accordingly, for these reasons, the Court concludes that Plaintiff's motion to compel the production of the Bevan legal memorandum (Docket Entry No. 36) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 26 day of January, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge